Case 24-2429, Eastern District of Arkansas, Kelly Flannery v. Peco Foods. For the court's permission, Your Honor, my client would like to sit at the counsel table with me. Your Honor, my client would like to sit at the counsel table with me. I represent the plaintiff in this matter, Kelly Flannery. And this is an appeal from the U.S. District Court, Eastern District of Arkansas, the Northern Division. Jurisdiction of the district court was pursuant to Arkansas Civil Rights Act of 1993. And the complaint alleged wrongful discharge, breach of implied covenant of good faith, breach of contract, and fraud. And this court has jurisdiction pursuant to 28 U.S.C. Section 1291 and Rule 4 of the Federal Rules of Civil Procedure. As this is an appeal from the judgment of a district court in a civil case. Basically, appellant alleges a violation of due process and equal protection guaranteed by the 14th Amendment of the United States Constitution and a violation of Federal Rules of Civil Procedure 56. Another issue to be discussed is issue of preclusion. This matter had already some of the issues determined in the Arkansas Employment Security Division, which determined that Mr. Flannery was terminated for no reason that he did against anything wrong against the company. Isn't that though, doesn't the term to bullet will doctrine apply here, which is the company doesn't have to give a reason. It could have a terrible reason for firing him. But under employment for will, they can fire him anyways. Well, we contend that it is, but I understand the court may see otherwise. But this issue had already been looked at by a state court and made that determination. And a fourth issue to discuss is defendant's trial tactics, which were in bad faith. Not only did they withhold a second issue of the employee handbook for two years until the judge ordered them to provide it, but they also provided a witness, a human resource person who was responsible for terminating him after she was given notice of the subject and procedure was followed to set up the depositions. If you read the transcript, she didn't prepare. At least she said she didn't, and that was her excuse for not answering the question. Pico, the defendant, is a chicken processing plant in Pocahontas, Arkansas. And at the time of Mr. Flannery's discharge, he was in management. He was a supervisor. He had worked himself up from just an employee, and in a period of four years he had worked himself up to be a supervisor. But he was one of these supervisors that if things are not going right, he's going to jump in and try to fix it. Well, they moved part of the line that he was supervising, they had to move 2,000 pound boxes of chickens that had already had their heads cut off and dipped in boiling water. They had to move them with a pallet jack, and if you've seen these pallet jacks, they have two big prongs that they can stick underneath the box and jack up and move. Well, the pallet jack didn't jack up, and the employee that was supposed to move it wouldn't even touch it. So Mr. Flannery, being the supervisor and the person he is, he went over and grabbed it and moved it to where it was supposed to be, but he heard something pop in his neck and back. It turned out he had a serious spine injury, and long story short, he worked on and off for a year, more off than on. And after a year, he had six or eight injections in his neck. During this time, was there a workers' comp claim filed? Am I right that there was not, and it was the company that was covering the medical bills? He thought there was. He thought there was a workers' comp because they were paying all the bills. But after I got involved and after we had won the employment case, I called workers' comp to verify everything, and they told me there had never been a case filed. And this is part of the reason we're contending that they ended up terminating him because he had just had six injections in his neck and spine, which were very expensive. And he was coming back to work full time, or at least try. And within the first day, they suspended him, and this was in January. They suspended him. They said, you flunked a drug test back in December. Well, what happened, and this was the case, this is the issue preclusion, because of the pain and everything, he took three drops of CBD oil, which he wasn't aware of it, but it had THC in it. That's marijuana. And they have a rule you have to see their doctors, so he was seeing pain management in Jonesboro, and he had to take a drug test, and they said, well, you flunked the drug test. And he was suspended on March the 3rd of 2021, and March the 8th, he was discharged for having marijuana in his system, or abuse of the drug rules. Well, there was a new rule that the handbook had been reissued. There was a new version of it. We didn't know it at the time, and he didn't know it at the time, but you had to look at the bulletin board to see what the rule was. And he got another employee, I think it was his sister, who gave him the copy of the bulletin that was on the bulletin board. It said the new rule regarding drugs, you had to meet a threshold of 50 milligrams. Well, on the test that pain management gave him, which wasn't even admissible, he tested 38 nanograms, which is way, way, way far from being 50 milligrams. So they didn't follow their own book. And the handbook, we contend, was a unilateral agreement because the employee didn't have anything to do with composing it. PECO composed the first handbook and the second handbook all their own. But at any rate, we contend that they didn't follow their own handbook in good faith, and that in itself was a breach of contract, if you will, even though they said this handbook is not a contract. Well, to start off with, it says it's not an employment agreement, and I believe Arkansas law is essentially that if it's an at-will employment, you can terminate them for any reason except for an unlawful reason. And you've got some that you've got in here that you've claimed. For example, you've got the workers' comp retaliation claim that I guess you were denied leave to amend. And that might be good enough, but there seems to be a statute that says that those claims can only be prosecuted in front of the workers' compensation commission. Well, what we contend is because the termination was so close to him showing up with having to have the six injections, which were very expensive, and PECO had to pay for those personally because they never filed a claim, we contend that that was in bad faith, that that was a pretext when he was discharged for violating the. Anyway, that's our argument in a nutshell. Now, I'm about out of time, and I want to save the last three minutes for rebuttal, if I may. Thank you. Thank you. May it please the court. My name is Steve Carmody, and I represent PECO Foods. PECO Foods is a chicken processing company that's based out of Tuscaloosa, Alabama. It has plants in Mississippi and Alabama, and they have two plants in Arkansas. One of them is Pocahontas plant. It's the newest plant of the family of plants. Mr. Flannery came to work for Pocahontas, and he was an employee at the plant. His employment was terminated on March 8, 2021. He failed a drug test that his medical provider had given to him because he was receiving pain injection treatments, and they had discussed with him that he should not be taking any kind of illegal drugs, including marijuana or marijuana products. What was the process? Was it standard communication for these medical providers to provide information to PECO on the folks who they were treating? Was that in the regular course of their treatment, or was this a one-off? No, it's regular course of the treatment in a workers' comp matter. But this wasn't. I thought there was no workers' comp claim. Marty, are we using the same term kind of loosely here? He was injured at work. It was filed with the workers' comp insurance carrier. They were working through that process. Whether he filed the workers' comp case, I don't think he ever did, and there's no evidence here that we were doing this outside of insurance. This was an insurance case. In the state, they have private insurers that provide workers' compensation coverage, and the claim notice was given to the insurer, and they were working with the insured. Both you as the named insured and the employee as the beneficiary. But no actual claim was actually filed with the workers' comp commission or with the insurance carrier. There was a claim filed with the insurance carrier by the employer. Now, it's up to the employee to file a workers' comp claim with the workers' comp commission if they don't feel like they're getting the compensation that they need or want under the act. The employer can also file a workers' comp if they dispute the injury, but there was no dispute that he was hurt at work. It's a work-related accident, and it was being covered under the workers' comp insurance. Now, the problem is there's not a whole lot of that in the record, if at all, but I will represent to this court that that's what happened because my law firm not only represents the company in matters like this, discrimination matters, we also represent them in the workers' comp matter, and we have a file open in the workers' comp case for that. So there was another lawyer in my firm that handles the workers' comp, but I will represent to the court that there was a workers' comp matter submitted to the insurance carrier, and they were working through that. And part of that process is that there's communications between the employer and the insurance carrier and the employer and the medical providers, and one of those communications was an email that went to the HR assistant that he had failed the drug test. And after that, that assistant informed the director of the plant, HR, by telephone, and then she called Tuscaloosa, and the decision was to fire him because he failed the test, that he was not being compliant in his medical treatment, and so therefore they fired him. There's no evidence that they fired him for any other reason other than that, and she testified at length in the deposition, and it's in the record. Her whole deposition is in the record, and she was completely prepared. She was prepared to answer the questions. She didn't refuse to answer any questions, and I think this is just a red herring that the counsel has brought up, that there was some kind of trial tactics or litigation tactics by me or my firm during the prosecution of this case. Let's talk about what the real issue is here, and Judge Strauss, you mentioned it. This is an employee handbook. He's claiming that the employee handbook is a contract, and that there was a breach of that contract, and all of his claims in his complaint emanate from that. Now, he also claims that, and he said it right during his oral argument, that this is a case about 1933 Civil Rights Act. There's nothing in the complaint about that. There's absolutely nothing about the due process in the complaint. These are not issues that were decided at the trial level. But what was decided at the trial level was the fact that this is a handbook, it has a disclaimer, and that it's an at-will employment situation. And there are a number of cases cited in our briefs where, if you have a disclaimer, you can't have a breach of contract claim. You can't have a lack of good faith and fair dealing claim. You can't have a specific performance claim, because specific performance assumes that there's a contract. And you cannot have a promissory estoppel slash fraud case, because you can't justifiably rely on the handbook as a contract when there's clear language in the handbook that says it's not a contract, and there's no implied or expressed provisions that are in the handbook that are contractual. As such, PICO could change the language at any time. PICO could, both with or without notice, change the way they operated. It could change the way procedures were handled in the handbook. Did the evidence show there was a change in the drug policy? There was a little bit of confusion. Was it a single page pulled from the bulletin board or something, and had they changed their handbook? What does the record say about that? The record says that there was a handbook, and then the trial court considered the little one-page thing with handwriting on it that said PICO policy that was added by him. The court considered that in its decision and said that we're going to assume just for argument's sake that this has all been a part of the handbook. And despite that and despite the addition to the policy that the counsel for the plaintiff added to that, it's a red herring because the handbook disclaimer trumps all. And the handbook disclaimer is clear that they can change the policy at any time. And Judge Straff said that even if they didn't follow the policies, they don't have to, and it doesn't get outside of the employment at will doctrine because the employment handbook has a disclaimer. And it says there's no implied or expressed provisions in here. And there's some public policy exceptions. Yes, if there's a public policy exception to it, if there's a whistleblower situation, if you're asked to do something illegal and you refuse to do it, those are all standard Arkansas cases that put you into the public policy type exception to the employment at will doctrine. But none of that is evident here. There's nothing in the record that's here. There's no public policy in having Mr. Flannery take THC products and put it in his body when his doctors told him not to because he was getting pain injections and opioid treatment. There's no public policy there that is upheld in this situation. So we're left with his new claims. And we addressed this in our complaint. He can't bring the due process claim. And I'm kind of confused whether the due process claim is PICO's against PICO or is it against the court. I'm just not sure because his briefs were not very clear on that. But just assume that it is against PICO. You can't have a due process claim against a private party. That's a constitutional right that's against the government, not against a private party like PICO. If there are no further questions, thank you. Thank you, Mr. Carmody. Mr. Steele, you used up all of your argument time. But we'll give you, do you want a minute? Do you need two minutes? I'm sorry, ma'am. You used up all your argument time, so we'll give you another minute. Would that be enough? Sure. First, he did not fail the drug test by their own policy that was stapled to the Bulletin Board, which another one of their employees in management, his supervisor, testified that that was the policy. And that's in the appendix. It shows 50 milligrams is the threshold. When the human resource woman was testifying, she said she didn't know what a threshold was. She didn't use that. She said she never saw the email that said he failed. She said she just, she and another employee got together. But I want to read what the judge said. And this is on page 790 of the appendix. I'm sorry, page 780. The court stated, quote, I don't think they should have fired him. That's on page 779. This is a state law action. While federal law rules apply on procedural questions, state law applies on substantive questions. And that's page 780 in the appendix. And I had some other statements to make, but I appreciate it. Thank you. Thank you. Thank you both for your argument. We appreciate it.